IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KWESI DARRIO HARPER  \*
       \*
  v.      \*  Civil Case No. GLR-13-909
       \*
COMMISSIONER, SOCIAL SECURITY  \*
       \*

\*\*\*\*\*\*\*\*\*\*\*\*

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2013-06, the above-referenced case was referred to me to review the parties' dispositive cross-motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment. ECF Nos. 17, 19. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that Mr. Harper's motion be denied.

Mr. Harper applied for Supplemental Security Income and Disability Insurance Benefits on April 1, 2010, alleging a disability onset date of June 1, 2009. (Tr. 126-133). His claims were denied initially on July 28, 2010, and on reconsideration on November 23, 2010. (Tr. 58-64, 70-73). An Administrative Law Judge ("ALJ") held a hearing on December 8, 2011, (Tr. 29-53), and subsequently denied benefits to Mr. Harper in a written opinion, (Tr. 11-28). The Appeals Council declined review, (Tr. 1-6), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ found that Mr. Harper suffered from the severe impairments of lumbar and cervical degenerative disc disease, status post motor vehicle accident, and diabetes. (Tr. 16). Despite these impairments, the ALJ determined that Mr. Harper retained the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant is limited to simple routine work with a sit/stand option." (Tr. 18). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Mr. Harper could perform, and that he was not therefore disabled. (Tr. 23).

Mr. Harper disagrees. He asserts several arguments in support of his appeal: (1) the ALJ did not assign adequate weight to the opinion of his treating physician; (2) that the Appeals Council did not adequately consider new and material evidence from a treating social worker; (3) that the ALJ's physical RFC is inadequate; (4) that the ALJ's mental RFC is inadequate; and (5) that the ALJ's reliance on the VE testimony was erroneous. Each argument lacks merit.

Mr. Harper's first argument is that the ALJ erred by assigning "little weight" to the opinions of his treating physician, Dr. Laverdis Davis. Pl. Mot. 26-29. This Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Here, the ALJ's decision meets that standard.

A treating physician's opinion merits controlling weight only when two conditions are met: 1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and 2) it is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); *Craig,* 76 F.3d at (refined by a later amendment to regulations as described by *Pittman v. Massanari*, 141 F.Supp.2d 601, 608 (W.D.N.C 2001). As the ALJ

noted, Dr. Davis's own treatment notes indicated that Mr. Harper's back pain was intermittent and was alleviated by Percocet. (Tr. 21, 308). Other evidence of record also conflicted with Dr. Davis's opinions, including the diagnostic imaging suggesting no evidence of spinal stenosis or nerve root impingement, Mr. Harper's own admissions that chiropractic treatment and medications help with his pain, and chiropractic notes indicating a reduction in symptoms. (Tr. 21, 232, 234, 297). Finally, the ALJ assigned "little weight" to the forms in which Dr. Davis conclusorily alleged that Mr. Harper's pain met Listing 1.04, because the forms failed to explain how certain criteria had been met, and the record evidence demonstrated that the criteria had not been met. (Tr. 17-18, 22). In light of the substantial evidence undermining the allegations in Dr. Davis's opinion forms, and the fact that this Court is not to reweigh the evidence considered by the ALJ, remand is unwarranted.

Mr. Harper further suggests that the Appeals Council ("AC") failed to consider "new and material" evidence, namely an opinion from a licensed social worker, Elizabeth Prenovean, that he alleges supported Dr. Davis's opinion that Mr. Harper was unable to work. Pl. Mot. 27-28. However, "the regulatory scheme does not require the [AC] to do anything more than what it did in this case, i.e., 'consider new and material evidence ... in deciding whether to grant review.'" *Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011). The AC is not required to take any specific action in response to new and material evidence, and is not required to provide a detailed explanation of its evaluation where it denies review. *Id*. Because the record clearly demonstrates the AC's receipt and consideration of the opinion from Ms. Prenovean, (Tr. 4), I cannot conclude that the AC discharged its duties improperly.

Moreover, new evidence is only material where there is "a reasonable possibility that the new evidence would have changed the outcome." *Meyer*, 662 F.3d at 705 (citing *Wilkins v. Sec'y,*

3

*Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). The report from Ms. Prenovean indicated that she had first examined Mr. Harper on November 30, 2011 (approximately one week before the ALJ hearing), and filled out the report a few weeks later, on January 17, 2012. (Tr. 402). She therefore had a limited treating relationship with Mr. Harper and, as a licensed social worker, was not an "acceptable medical source" whose opinion may be entitled to controlling weight. *See* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006), at *2. Mr. Harper contends that Ms. Prenovean's opinion corroborated the opinion from Dr. Davis. However, the only similarity between those opinions is that both Dr. Davis and Ms. Prenovean concluded that Mr. Harper could not work. *See* (Tr. 337-39, 347, 350-52, 402-04). Dr. Davis's opinion dealt with Mr. Harper's physical condition and Ms. Prenovean addressed Mr. Harper's mental condition, rendering the opinions entirely unhelpful to corroborate one another. Finally, Ms. Prenovean's opinion makes specific reference to and relies upon her "eval + screening form," which was not provided to the AC. (Tr. 402). In the absence of any corroborating mental health treatment records, and for the reasons described above, there is no reasonable possibility that the opinion from Ms. Prenovean would have changed the Commissioner's conclusion.

Mr. Harper's next argument is that the ALJ's physical RFC was inadequate because the ALJ (1) failed to provide a complete function-by-function analysis; (2) improperly substituted his own medical opinion for that of doctors; and (3) failed to define the frequency with which Mr. Harper could change from sitting to standing. Pl. Mot. 24-26, 29-32. Mr. Harper's contention that the ALJ failed to properly address his limitations in a narrative, function-by-function assessment pursuant to Social Security Ruling ("SSR") 96-8p does not hold water.[1] The

---

[1] SSR 96-8p requires that an RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence ... The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96–8p, 1996 WL 374184 (July 2, 1996), at *2.

ALJ's RFC analysis spans more than four pages, and includes a detailed review of the records from Mr. Harper's treating healthcare providers and the state agency medical consultants. (Tr. 18-22). The ALJ explained how he resolved the inconsistencies between Mr. Harper's description of the severity and intensity of his pain and the objective evidence of record. In fact, the ALJ also assigned "little weight" to the opinions of the state agency consultants, noting that the ALJ found Mr. Harper to be more limited than those consultants had believed because he gave Mr. Harper "every benefit of the doubt[,]" and based his decision in part on medical evidence submitted after the state agency review. (Tr. 22). The ALJ's RFC determination provides substantial evidence to support his assessment that Mr. Harper would be capable of simple, routine, sedentary work with a sit/stand option.

Mr. Harper next argues that the ALJ did not cite to any medical report establishing a need for a sit/stand option. Pl. Mot. 30-31. However, an ALJ need not parrot a single medical opinion, or even assign "great weight" to any opinions, in determining an RFC. Instead, an ALJ is required to consider "all of the relevant medical and other evidence." *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also Felton-Miller v. Astrue,* 459 F.App'x 226, 230-31 (4th Cir. 2011) (determining that an ALJ need not obtain an expert medical opinion as to an RFC, but should base an RFC on all available evidence). The RFC determined by the ALJ in this case, which allows Mr. Harper the maximum flexibility in his physical position during the workday, takes into account all of the evidence cited by the ALJ, including the treatment notes from treating physicians indicating controlled symptoms with physical therapy and medications, (Tr. 19), the objective findings on diagnostic testing, (Tr. 18, 20), and Mr. Harper's testimony regarding his discomfort, (Tr. 20). Accordingly, the ALJ's RFC is consistent with the medical evidence of record.

5

Mr. Harper also contends that the physical RFC set forth by the ALJ does not specifically indicate how long he can sit or stand. Pl. Mot. 31. However, by limiting Mr. Harper to sedentary work, the ALJ made an implied finding regarding those abilities. *See* SSR 83–10, 1983 WL 31251 (Jan. 1, 1983), at *5 ("[A]t the sedentary level of exertion, periods of standing and walking should generally total no more than about 2 hours of an 8–hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."). In the hypothetical to the VE, the ALJ included a "sit/stand option. (Tr. 51). The VE confirmed her understanding that "sit/stand option" meant the ability to change position "at will." (Tr. 52). In light of the inclusion of the sit/stand option, which would allow Mr. Harper unfettered discretion regarding whether to sit or stand, and the inclusion of a sedentary level of exertion, which indicates a finding that Ms. Harper is capable of a total of 8 hours of work, the ALJ did not have to make more specific findings about his maximum daily capacity for sitting or standing.

Fourth, Mr. Harper alleges that the ALJ's mental RFC was inadequate because it did not provide a function-by-function analysis of his mental capabilities, and simply mandated "simple routine work." Pl. Mot. 32-34. In fact, there was no mental health information presented to the ALJ for consideration. The ALJ limited Mr. Harper to "simple routine work" to address concentration issues resulting from his physical impairments. As noted above, Mr. Harper first sought treatment from Ms. Prenovean approximately one week before the ALJ hearing, and her report was not prepared until several weeks after the ALJ's opinion had been issued. At the hearing, Mr. Harper's attorney made one reference to "some mild depression" while listing impairments, (Tr. 32), but there was no further mention of any mental health treatment or diagnoses. In fact, when asked a catch-all question about the reasons he believed he could not work, Mr. Harper did not mention mental health at all, but simply listed his back, his neck, his

diabetes, and his difficulty standing and walking due to tingling and numbness in feet. (Tr. 48-49). Finally, the consistent records from Dr. Davis, Mr. Harper's primary physician, indicated that Mr. Harper showed "no depression, anxiety, or agitation." (Tr. 293, 295, 298, 301, 311, 357, 360, 363, 367, 370, 373, 376, 382, 385, 388). In light of the record presented to the ALJ reflecting no severe mental health issues, the ALJ did not err in failing to provide a more detailed mental health analysis.

Finally, Mr. Harper submits that the ALJ's hypothetical to the VE was erroneous because it did not include a function-by-function assessment and because the VE did not clarify that the sit-stand option deviated from the Dictionary of Occupational Titles ("DOT"). Pl. Mot. 32 However, the ALJ is afforded "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, No. 98-1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (citing *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986)). For the reasons described above, the ALJ's RFC was supported by substantial evidence, and the hypothetical aligned completely with that adequately-supported RFC. Moreover, the VE did clarify that her testimony deviated from the DOT as to the sit-stand option.[2] (Tr. 52) ("No, Your Honor, other than in the hypothetical is indicated the person could kind of sit and you know stand at will, and I would indicate that the jobs that I did provide even at a sedentary exertional level were workbench positions, so an individual would have that flexibility."). Accordingly, nothing about the hypothetical or the resulting VE testimony merits remand.

---

[2] Mr. Harper appears to have misstated the evidence of record by asserting that, "The transcript clearly shows that when the V/E was asked if there was any conflict between her testimony and the DOT she clearly said "NO" and never . . . provide[d] any reasonable explanation for how her testimony differs from the DOT." Pl. Mot. 32.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment, (ECF No. 19); and

2. the Court DENY Plaintiff's Motion for Judgment on the Pleadings, (ECF No. 17) and CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: January 14, 2014                                     /s/
                                                Stephanie A. Gallagher
                                                United States Magistrate Judge